UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Felecia Redding,<br><br>　　Plaintiff,<br><br>v.<br><br>Ashton B. Carter, Secretary,<br>　　U.S. Department of Defense,<br>　　Defense Intelligence Agency<br><br>　　Defendant. | Case No. 16-2149 |

## COMPLAINT

1. Plaintiff Felecia Redding ("Plaintiff" or "Redding") brings this action against Defendant, Ashton B. Carter, the Secretary of the U.S. Department of Defense, Defense Intelligence Agency ("Defendant" or "DIA"), under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Whistleblower Protection Act ("WPA").

## Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1346; 42 U.S.C. §§ 2000e-5(f)(3); 2000e-16, 29 U.S.C. 633(a); and 5 U.S.C. § 7702.

3. At all times relevant to this action, Defendant committed all of the actions which comprise the unlawful employment practices alleged herein within the jurisdiction of the United States District Court for the District of Columbia, where the Defendant has his principal office. Thus, venue properly lies before this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(e). Venue in this district is also proper under 42 U.S.C. § 2000e-5(f)(3).

4. Redding has met all jurisdictional prerequisites for filing this action, and this action is authorized to be filed here pursuant to 42 U.S. Code § 2000e–16(c).

1

**Parties**

5. Redding is a resident of the State of Maryland, and she has been an employee of DIA since February 2004. Redding is an African-American woman who, at all relevant times, has been older than 40 years of age.

6. Ashton B. Carter is the Secretary of the U.S. Department of Defense, the parent department of DIA. He is sued here in his official capacity.

**Facts**

*Background*

7. Redding is employed by DIA as a Supervisory Human Resources Specialist, in the Internal Staffing Branch, Career Assignments Division, Office of Human Resources ("OHR").

8. A Supervisory Human Resources Specialist is a 201-series position. Employees in 201-series positions typically manage, supervise, administer, advise on, or deliver human resources management products or services.

9. At the time of the events recounted in paragraphs 14 through 56 (herein, "all relevant times"), DIA categorized Redding as grade 14 on the agency's pay scale ("GG-14").

10. At all relevant times, Redding was at least 52 years of age.

11. At all relevant times, Deborah Hartman was the Director of OHR and, in that capacity, is the approving official for all GG-15 level positions in OHR, including the Deputy Chief position at issue in this complaint.

12. At all relevant times, until in or around November 2013, Warner Eley was the Division Chief of the Employee Mobility. In this capacity, he was the chair of the panel which selected the Deputy Chief.

13. Since 2005, only one African American female in DIA's OHR has been promoted to 201-series position, grade 15.

### *Deputy Chief Hiring Process*

14. On or around April 19, 2013, a DIA human resources specialist sent a job posting via email to the OHR All Distribution list serve.

15. The job posting advertised the position of Supervisory Human Resources Specialist (Deputy Chief, Employee Mobility) (herein, "Deputy Chief position" or "the vacancy").

16. DIA advertised the Deputy Chief position as a 201-series, grade 15 position, which required senior level staffing experience.

17. Redding typically received emails sent to the OHR All Distribution list serve.

18. At the time Redding received the email advertising the vacancy she was the Branch Chief of Internal Staffing, a 201-series position.

19. Redding submitted her resume via email to the human resources specialists listed in the job posting prior to the deadline of April 24, 2013. According to the posting, a resume was the only required document to be fully considered for the vacancy.

20. Upon receipt of an application, DIA custom and practice calls for a human resource specialist to determine if the applicant meets the minimum qualifications of a position.

21. The human resource specialist reviewed Redding's application and determined that she met the minimum qualifications for the vacancy.

22. On or around April 29, 2013, Redding received an email notification that she had been selected for an interview for the Deputy Chief position.

23. On or around May 1, 2013, Walter Eley and two other DIA GG-15 employees interviewed Ms. Redding for the vacancy.

24. On or around May 1, 2013, a human resources consultant notified Hartman that there were some OHR employees who were interested in applying for the vacancy but had not received the initial job announcement because they were not on the proper email distribution list. The human resources consultant asked Hartman for permission to "hold on the cert that was issued."

25. Hartman replied to the human resources consultant and instructed her to advertise the Deputy Chief position to both current 201- and 301-series employees.

26. 301-series positions are within the Miscellaneous Administration and Program Series.

27. Re-advertising a job announcement because there may have been employees who were not on the distribution list and did not receive the initial job announcement was normal practice at DIA.

28. It was not normal practice for DIA to direct the job announcement to be re-advertised to two different series.

29. OHR re-advertised the vacancy on or around May 2, 2013.  "Senior level staffing" remained a "Mandatory Assessment Factor" for the Deputy Chief position.

30. Upon information and belief, the approving official, Hartman, had informally offered the position to Aradhana Nayak-Rhodes before April 19, 2013.

31. At the time of her application, Nayak-Rhodes was a 301-series employee, between 30 and 40 years of age.

32. Nayak-Rhodes' race is Asian.

33. Nayak-Rhodes officially applied for the position between April 19 and April 29, 2013.

34. Upon reviewing Nayak-Rhodes' application, a human resources specialist determined that she did not meet the minimum qualifications for the vacancy as she did not demonstrate staffing experience. Therefore, the human resources specialist did not recommend Nayak-Rhodes to the hiring official, Walter Eley.

35. After the position was opened to both 201- and 301-series employees on May 2, 2013, Nayak-Rhodes reapplied. Again, the human resources specialist determined that she did not meet the minimum qualifications for the position as she did not demonstrate staffing experience.

36. On or around May 9, 2013, the human resources specialist told Eley that there were no new or additional applications received for his consideration.

37. On or around May 10, 2013, the human resources specialist sent Eley, at his request, a list of the names of all applicants that applied for the vacancy. The list included Redding under the "referred" heading and Nayak-Rhodes under the "non referrals" heading.

38. Eley directed the human resources specialist to forward all the applications to him, including the "non referrals."

39. In or around late May, Eley and others interviewed Nayak-Rhodes for the Deputy Chief position.

40. On or around May 24, 2013, Eley told Ms. Redding that Nayak-Rhodes had been selected for the Deputy Chief position. Eley also told Redding, "You are good and you need to have my job working at my level because you are more operational and Aradhana [Nayak-

Rhodes] needs to work for you and when I leave, I told Ms. Hartman that you should have my job."

41. Redding was the second choice on the certificate for the vacancy.

42. Redding possessed all the qualifications for the Deputy Chief position, including senior level staffing experience.

43. Prior to her appointment to the Deputy Chief position, Nayak-Rhodes did not have senior level staffing experience or experience with 201-series duties.

44. Redding suffered emotional distress after Nayak-Rhodes's selection to the Deputy Chief position due to the racially discriminatory nature of the selection.

### *DIA Retaliates against Plaintiff for Filing EEO Charge*

45. On June 12, 2013, Redding contacted an EEO counselor regarding her discriminatory non-selection. Redding waived her right to remain anonymous during the informal complaint process, and therefore, soon after, upon information and belief, Eley and Hartman became aware of her allegation of discriminatory non-selection.

46. On June 21, 2013, Eley discouraged EEO activity by saying, "people have been here too long," and "there are going to be some changes and then they will want to go to EEO. I do not care if they go to EEO."

47. On August 21, 2013, Eley again discouraged EEO activity by repeating that, "people have been here too long."

48. Eley continues to make comments suggesting that he will be hostile to EEO claims, dismissive of EEO principles, and mindful of EEO activity in making unspecified changes.

49. On August 27, 2013, Redding filed her formal complaint alleging discriminatory non-selection.

50. In April 2014, Hartman reassigned Redding from her position as Branch Chief of Internal Staffing to the position of Branch Chief of Performance Management.

51. In November 2014, Hartman reassigned the Performance Management Branch to another division within OHR.

52. Even though Redding had been the Branch Chief of the Performance Management Branch, Hartman did not reassign her with her direct reports to the other OHR division.

53. Instead, Redding's Division Chief at the time, Cheryl Boudreau, informed Redding that there was not enough work to warrant her incumbency in a position as Supervisor or Branch Chief.

54. Hartman changed Redding's title from Branch Chief to Supervisor Human Resources Specialist.  However, since December 2014, she has not been assigned any supervisory duties or direct reports and her duties have adversely and significantly changed.

55. Since December 2014, Redding has shared duties and workspace with co-workers who are GG-13 employees.

56. In or around September or October 2016, DIA instituted a new promotion system. On October 19, 2016, Redding was notified that she is not deemed promotable under this new promotion system.

## COUNT I
**Discriminatory Non-Selection**
*Title VII of the Civil Rights Act*
*Age Discrimination in Employment Act*

57. All other allegations of this pleading are incorporated here by reference.

7

58. Defendant engaged in unlawful age and race discrimination when it selected Aradhana Nayak-Rhodes for the Deputy Chief position. Nayak-Rhodes, an Asian-American woman, was significantly younger than Redding, an African-American woman over forty years of age, and was less qualified for the position.

59. Based on the above, Defendant violated the ADEA, 29 U.S.C. §§ 621, *et seq*. and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2, *et seq*. As a direct and proximate result of Defendant's conduct as set forth, Plaintiff has suffered actual and compensatory damages, including back pay, front pay, and loss of benefits within the jurisdictional limits of this court. Plaintiff will further show that Defendant's conduct as alleged was willful, entitling Plaintiff to additional liquidated damages as well as any additional damages to the extent provided under the ADEA and Title VII.

## COUNT II
### Retaliation
*Title VII of the Civil Rights Act*
*Age Discrimination in Employment Act*

60. All other allegations of this pleading are incorporated here by reference.

61. Title VII and ADEA prohibit an employer from discriminating against any of its employees because the employee has opposed an unlawful discriminatory practice, or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII or ADEA.

62. Defendant engaged in unlawful reprisal discrimination when it subjected Redding to threatening comments about EEO participation; when Defendant changed her duties to eliminate her supervisory duties and moved her Branch without moving her workspace with the Branch; and when DIA implemented a new promotion system that deems Redding not promotable.

63. Based on the above, Defendant violated the ADEA, 29 U.S.C. §§ 621, *et seq*. and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2, *et seq*. As a direct and proximate result of Defendant's conduct as set forth, Plaintiff has suffered actual and compensatory damages, including back pay, front pay, and loss of benefits within the jurisdictional limits of this court. Plaintiff will further show that Defendant's conduct as alleged was willful, entitling Plaintiff to additional liquidated damages as well as any additional damages to the extent provided under the ADEA and Title VII.

### COUNT III
### Retaliation
*Whistleblower Protection Act, 5 U.S.C. § 2302*

64. All other allegations of this pleading are incorporated here by reference.

65. Redding's disclosures, participation and other protected activities ("activities") were a contributing factor in Defendant's personnel actions taken or to be taken against Redding.

66. Redding's activities are protected by WPA, 5 U.S.C. § 2302.

67. From June 2016 through the present, Defendant's officials knew of Redding's disclosures and other protected activities.

68. Defendant's personnel actions occurred in the midst of Plaintiff's protected participation in official EEO proceedings and a reasonable person could conclude that the disclosures or other protected activities were a contributing factor in the personnel action.

69. Defendant's adverse actions against Redding caused her damages including loss of pay and promotion, loss of reputation, anxiety, upset, mental anguish, humiliation and emotional distress.

70. Redding's claims of reprisal in violation of WPA can be appealed to the Merit Systems Protection Board MSPB. 5 U.S.C. § 1214(a)(3).

71. Redding's claims are "mixed" in that they include both discrimination and whistleblower claims.

72. Redding satisfied all administrative prerequisites to institute this action here.

73. Pursuant to WPA, 5 U.S.C. § 1221, Redding is entitled to corrective action, including but not limited to being placed, as nearly as possible, in the position she would have been in had the prohibited personnel practices not occurred, back pay and related benefits, medical costs incurred, travel expenses, any other reasonable and foreseeable consequential damages, and compensatory damages (including interest, reasonable expert witness fees, and costs).

## **PRAYER FOR RELIEF**

Redding seeks the following relief:

A. Declaratory relief that the acts and practices described in this complaint are unlawful in violation of Title VII, ADEA, and WPA.

B. Preliminary and permanent injunctive relief to restore her as nearly as possible in the position she would have been in had the prohibited personnel practices not occurred.

C. Instatement into the position of Deputy Chief that was wrongfully denied to her.

D. Equitable relief to assure Defendant's workplaces are free from unlawful discrimination and retaliation by directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment and advancement opportunities.

E.  Back pay and related benefits, medical costs incurred, travel expenses, any other reasonable and foreseeable consequential damages.

F.  Compensatory damages (including interest, reasonable expert witness fees, and costs).

G.  Costs of this action, including reasonable attorneys' fees.

H.  Such other and further relief this Court finds just and proper.

Respectfully submitted,

Date: October 26, 2016

/s/ Richard R. Renner
Richard R. Renner, OH0021
Kalijarvi, Chuzi, Newman & Fitch, P.C.
1901 L St. NW, Suite 610
Washington, DC  20036
(202) 466-8696 direct
(202) 331-9260 office
1-877-527-0446 fax
rrenner@kcnlaw.com
*Attorney for Plaintiff*