# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FELECIA REDDING,<br><br>        *Plaintiff*,<br>  v.<br><br>JIM MATTIS, Secretary, United States Department of Defense,<br><br>        *Defendant*. | Civil Action No. 16-2149 (TJK) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Felecia Redding works in human resources at the Defense Intelligence Agency ("DIA"), located within the Department of Defense. ECF No. 11 ("Am. Compl.") ¶ 7. Her operative complaint brings two counts against Defendant, each alleging a different type of unlawful conduct: Count I alleges unlawful race and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* Am. Compl. ¶¶ 61-63. Count II alleges unlawful retaliation in violation of Title VII. *Id.* ¶¶ 64-67. The instant Opinion and Order concerns Defendant's motion to dismiss Count II or, alternatively, for partial summary judgment on Count II. ECF No. 12.[1] For the reasons explained below, the Court will grant the motion.

## I. Redding's Complaint

The Court will briefly summarize Redding's operative complaint, discussing particular facts in greater detail as required below. Redding is an African-American woman who, during

---

[1] In considering the motion, the Court considered Redding's Amended Complaint and all other relevant parts of the record, including the following: ECF No. 12 at 3-5 ("Def.'s SoMF"); *id.* at 6-16 ("Def.'s Br."); ECF No. 12-2 ("Martinez Decl."); ECF No. 13 ("Pl.'s Opp'n"); ECF No. 13-1 ("Pl.'s Resp. SoMF"); ECF No. 13-2 ("Renner Decl."); ECF No. 15 ("Def.'s Reply"); ECF No. 17 ("Pl.'s Supp. Br."); ECF No. 18 ("Def.'s Supp. Br.").

the relevant time period, was at least 52 years old. Am. Compl. ¶¶ 5, 10. She alleges that, in May 2013, DIA passed her up for a promotion in favor of a less-qualified Asian-American woman who was under 40 years old. *See id.* ¶¶ 14-44. This act, which in Redding's view was discriminatory, forms the basis for Count I of her complaint. *Id.* ¶¶ 61-63.

On June 12, 2013, Redding raised claims of discrimination with a counselor in DIA's Equal Employment Opportunity ("EEO") office. *Id.* ¶ 45. On June 21, 2013, the Division Chief overseeing Redding's department allegedly said that "people have been here too long," and that "there are going to be some changes and then they will want to go to EEO. I do not care if they go to EEO." *Id.* ¶¶ 12, 46. On August 21, 2013, the Division Chief again said that "people have been here too long." *Id.* ¶ 47. Redding claims that these "threatening comments about EEO participation" amounted to retaliation for her initiating EEO counseling. *Id.* ¶ 66. On August 27, 2013, Redding filed a formal EEO charge. *Id.* ¶ 49. Redding claims that, starting in April 2014, she suffered further acts of retaliation, including a transfer to another office, removal of her supervisory responsibilities such that she now has the same duties as lower-ranked employees, and elimination from consideration for further promotions. *See id.* ¶¶ 50-60. All of these alleged acts of retaliation form the basis for Count II of her complaint. *See id.* ¶ 66.

## II.  Analysis

Defendant argues that Redding failed to exhaust Count II to the extent it rests on alleged acts of retaliation that occurred after the filing of her EEO charge. *See* Def.'s Br. at 5-10. Defendant also argues that the only remaining conduct at issue in Count II—the Division Chief's verbal comments—do not suffice to make out a retaliation claim. *Id.* at 4-5. The Court agrees with Defendant and will dismiss Count II without prejudice.

### A. Redding's Asserted Exhaustion of Her Retaliation Claims

Redding does not the dispute the facts regarding exhaustion set forth in Defendant's statement of material facts. *See* Pl.'s Resp. SoMF ¶ 1. On June 12, 2013, Redding sought EEO counseling. Def.'s SoMF ¶ 1. On August 27, 2013, Redding filed a formal EEO charge. *Id.* ¶ 3. The charge included a claim of retaliation based on the Division Chief's comments on June 21 and August 21, 2013. *See id.* DIA determined that Redding's retaliation claims were not actionable and declined to investigate them. *Id.* ¶ 4. DIA's investigation into her remaining claims was completed on January 31, 2014. *Id.* ¶ 5. Redding subsequently requested a hearing before an Equal Employment Opportunity Commission ("EEOC") administrative judge. *See id.* On December 4, 2015, Redding sought leave to amend her EEOC complaint to add certain acts of retaliation that began in December 2014. *Id.* ¶ 6. The EEOC administrative judge denied her motion for leave to amend. *Id.* ¶ 7. In May 2016, Redding voluntarily withdrew her request for an administrative hearing. Martinez Decl. ¶ 11 & Ex. 8.[2]

Because Defendant's exhaustion defense is fit for resolution based on these undisputed facts, without the need for discovery, the Court will treat this part of Defendant's motion as one for summary judgment. *See Mount v. Johnson*, 36 F. Supp. 3d 74, 81-82 (D.D.C. 2014). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when,

---

[2] While this last fact does not appear in Defendant's statement of material facts, the Court has discretion to look beyond the statement of material facts and review the entire record. *See Arrington v. United States*, 473 F.3d 329, 335 (D.C. Cir. 2006). The Court will therefore consider this fact, which is undisputed. Moreover, the date when the administrative hearing concluded is a fact fit for judicial notice. *See Tyson v. Brennan*, 277 F. Supp. 3d 28, 34 (D.D.C. 2017); *Vasser v. McDonald*, 228 F. Supp. 3d 1, 10 (D.D.C. 2016).

viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

The Supreme Court's 2002 decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), has led many courts to change how they analyze Title VII's requirement that a plaintiff first exhaust her administrative remedies before filing suit. In particular, since *Morgan*, district judges in this Circuit have split on how to apply this requirement where the plaintiff has alleged discrete acts of retaliation that occurred after the filing of the EEO charge, as Redding does here. *See generally Poole v. U.S. Gov't Publ'g Office*, 258 F. Supp. 3d 193, 201-02 (D.D.C. 2017) (discussing split); *Mount*, 36 F. Supp. 3d at 84-85 (similar). A majority of the judges who have addressed the issue have held that the plaintiff must separately exhaust each subsequent discrete act of retaliation. *See Poole*, 258 F. Supp. 3d at 201; *Mount*, 36 F. Supp. 3d at 84-85. A minority, however, have held that a plaintiff need not separately exhaust subsequent acts of retaliation that are "like or reasonably related to" the acts of retaliation described in the EEO charge. *See Poole*, 258 F. Supp. 3d at 201-02; *Mount*, 36 F. Supp. 3d at 85-86. Under this second approach, the analysis "centers on whether the allegations that were specifically put before the agency and the new allegations the plaintiff seeks to litigate constitute the same cause of action and are factually similar such that they would be discovered during the agency's investigation." *Mount*, 36 F. Supp. 3d at 85-86.

The Court need not choose between these two approaches, because Redding's claims of retaliation (except those concerning the Division Chief's comments in June and August 2013) fail under either. Under the first, more demanding approach, it is clear that Redding did not exhaust these claims because she never raised them with the agency's EEO office. And she fares

no better under the second approach, because, as set forth below, the subsequent acts of retaliation are not "like or reasonably related" to the claims that Redding did raise in the EEO charge.

First, Redding has not exhausted her allegation that, in October 2016, DIA determined she was not eligible for promotion. *See* Am. Compl. ¶ 58. In *Payne v. Salazar*, 619 F.3d 56 (D.C. Cir. 2010), the D.C. Circuit concluded that the "like or reasonably related" test (assuming, without deciding, that it remained good law) "necessarily" did not encompass acts of retaliation occurring after end of the administrative investigation, because the investigation could not have uncovered them. *See id.* at 65. Here, the administrative proceedings related to Redding's claims ended in May 2016. Martinez Decl. ¶ 11 & Ex. 8. *Payne* thus compels the conclusion that any claim related to the October 2016 decision about Redding's eligibility for promotion was not properly exhausted.

Second, Redding has failed to exhaust her allegations that she suffered acts of retaliation starting in April 2014 and during the pendency of her hearing before the EEOC administrative judge.[3] These acts of retaliation were too different in kind from the earlier allegations in her EEO charge to be "like or reasonably related" to them. Her EEO charge claimed that DIA failed to promote her based on her race and age, and that the Division Chief's comments in 2013 amounted to retaliation. Def.'s SoMF ¶ 3. Redding's operative complaint in this Court alleges that she was reassigned to a new position in April 2014; that she was reassigned yet again in November 2014, at which time her title was changed from "Branch Chief" to "Supervisor"; and that since December 2014, she "has shared duties and workspace with co-workers" who have a

---

[3] The Court assumes, without deciding, that claims arising after the end of the agency's investigation and during the pendency of a hearing before an EEOC administrative judge may be deemed exhausted under the "like or reasonably related" test.

lower paygrade. Am. Compl. ¶¶ 50-55. The qualitative differences between these later acts of retaliation and the acts alleged in the EEO charge (Redding's nonpromotion and the Division Chief's comments) preclude a finding that they were like or reasonably related to one another, under the test as applied in this Circuit. *Cf. Poole*, 258 F. Supp. 3d at 203 (holding "disparaging statements" were not like or reasonably related to "pay-discrimination" alleged in EEO charge); *Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121-22 (D.D.C. 2010) (holding reduction of duties was not like or reasonably related to "failure to promote" alleged in EEO charge).

And there is another, independent reason why these later acts of alleged retaliation are not "like or reasonably related" to those in Redding's EEO charge. DIA's investigation could not have been reasonably expected to uncover them, because of the temporal distance between them and the allegations in her EEO charge that were actually investigated. DIA dismissed the sole retaliation claim in her EEO charge, which was based on the Division Chief's comments in June and August 2013, pursuant to 29 C.F.R. § 1614.107(a)(1) for failure to state a claim. *See* Def.'s SoMF ¶ 4. As will be explained below in Section B of this Opinion, DIA's decision was correct because the Division Chief's comments were not actionable as retaliation.[4] Thus, the investigation was properly limited to a discrete act of nonpromotion that occurred in May of 2013. As such, the investigation could not have reasonably been expected to uncover acts of retaliation that occurred starting in April 2014, almost a year later. *Cf. Wedow v. City of Kansas City*, 442 F.3d 661, 673 (8th Cir. 2006) (citing *Shelton v. Boeing Co.*, 399 F.3d 909, 912-13 (8th Cir. 2005)) (explaining that investigation initiated four months after end of discrete period in

---

[4] The Court notes that DIA analyzed this as a retaliatory hostile work environment claim, *see* Martinez Decl. Ex. 4, at 1-2, 4-5, perhaps because Redding characterized it as a hostile work environment claim in an email to DIA's EEO office, *see* Martinez Decl. Ex. 2. In the complaint and the briefing submitted to this Court, however, neither party has suggested it should be analyzed as a hostile work environment claim. *See* Am. Compl. ¶¶ 64-67; Def.'s Reply at 2 n.2.

6

which alleged acts of discrimination occurred could not have been reasonably expected to encompass subsequent acts).

Thus, Redding has not exhausted her retaliation claim in Count II (except insofar as it arises from the Division Chief's comments in June and August 2013). Redding contests this conclusion, but her arguments are unavailing.

Redding points out that she attempted to exhaust some of these claims by moving to amend her administrative complaint in December 2015. *See* Pl.'s Opp'n at 2 & n.1. But the EEOC administrative judge denied her motion, and had at least two valid grounds for doing so. First, EEOC regulations allow a complainant to add new claims only if they are "like or related" to those she raised with the agency EEO office. *See* 29 C.F.R. § 1614.106(d). Redding's new claims failed this "like or related" test for the very reasons already explained above: they were too different in kind and separate in time from the incidents described in her EEO charge. *See* Martinez Decl. Ex. 7, at 2. Thus, Redding was required to return to the agency EEO office to exhaust them. Second, as the administrative judge noted, Redding's motion was untimely: she waited until December 2015 to seek leave to amend, even though the conduct at issue began in December 2014 and she had been represented by counsel throughout. *See id.*; *Burkes v. Holder*, 953 F. Supp. 2d 167, 174 & n.4 (D.D.C. 2013) (holding plaintiff did not exhaust claim where agency properly denied leave to amend to add it); *cf. Hutchinson v. Holder*, 668 F. Supp. 2d 201, 212-14 (D.D.C. 2009) (declining to overturn decision of administrative judge allowing amendment of EEO complaint). As a result, Redding never properly exhausted these claims.

Redding also cites several cases (not binding on this Court) adopting a broad interpretation of the "like or reasonably related" test as applied to retaliation claims, under which *any* claim of retaliation for the filing of an EEO charge is *always* "related" to the charge. *See*

Pl's Opp'n at 10-11, 12-13.[5] This broad interpretation was adopted by several circuits before *Morgan*, and it appears to have continuing vitality in some of them. *See Phillips v. Caris Life Scis., Inc.*, 715 F. App'x 365, 369-70 (5th Cir. 2017) (citing *Gupta v. E. Tex. State Univ.*, 654 F.2d 411 (5th Cir. 1981)); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013) (citing *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 482-83 (7th Cir. 1993)); *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 301-04 (4th Cir. 2009) (citing *Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992)). An unpublished decision by a D.C. Circuit panel, rendered in 1997 and thus predating *Morgan*, adopted the reasoning of one of these cases. *Lofton v. Atwood*, No. 97-5274, 1998 WL 700155, at *1 (D.C. Cir. July 13, 1998) (citing *Nealon*, 958 F.2d at 590).

Nonetheless, the D.C. Circuit's decision in *Payne* is inconsistent with at least some aspects of this broad interpretation of the "like or reasonably related" test (assuming the test remains viable at all). For example, circuits adopting this broad interpretation have sometimes applied it when the alleged acts of retaliation occurred after the administrative investigation ended, and even after the plaintiff filed suit. *See Jones*, 551 F.3d at 302-03; *McKenzie*, 92 F.3d at 483-85; *Gupta*, 654 F.2d at 413-14. *Payne* flatly rejected those results, categorically holding that acts occurring after the administrative investigation ended are not "like or reasonably related" to the claims in the EEO charge. *See* 619 F.3d at 65. Moreover, *Payne* analyzed the retaliation claims at issue using the test for exhaustion of discrimination claims set forth in *Park v. Howard University*, 71 F.3d 904 (D.C. Cir. 1995), implicitly rejecting the proposition that

---

[5] The one binding case she cites on this point is *Saksenasingh v. Secretary of Education*, 126 F.3d 347 (D.C. Cir. 1997). Pl.'s Opp'n at 10. But the D.C. Circuit has since clarified that the relevant portion of *Saksenasingh*—which predates *Morgan*—simply did not address the boundaries of the "like or reasonably related" test. *See Payne*, 619 F.3d at 65 n.9. The same appears to be true of another case decided around the same time as *Saksenasingh*. *See Harris v. Sec'y, U.S. Dep't of Veterans Affairs*, 126 F.3d 339, 346 (D.C. Cir. 1997).

8

retaliation claims should be treated differently from discrimination claims under the "like or reasonably related" test. *See* 619 F.3d at 65.

Accordingly, the Court concludes that even if the "like or reasonably related" test survived *Morgan* in this Circuit, it did not survive in the broad form advanced by Redding. This is consistent with the "minority" approach of those district judges in this Circuit who have continued to apply the "like or reasonably related" test. *See Mount*, 36 F. Supp. 3d at 85-86 (describing minority approach). Those judges have often followed the Eighth Circuit's decision in *Wedow v. City of Kansas City*, 442 F.3d 661 (8th Cir. 2006), which held that *Morgan* narrowed (but did not completely overturn) its prior approach to exhaustion of retaliation claims. *See Pierson v. WMATA*, 821 F. Supp. 2d 360, 365-66 (D.D.C. 2011); *Hazel v. WMATA*, No. 02-cv-1375 (RWR), 2006 WL 3623693, at *6-8 (D.D.C. Dec. 4, 2006); *see also Marcelus v. Corr. Corp. of Am.*, 540 F. Supp. 2d 231, 235-36 (D.D.C. 2008) (applying *Park* test to retaliation claim). As explained above, Redding's claims do not pass muster under this narrower version of the "like or reasonably related" test. And, again as noted above, they also fail the more demanding test that a majority of judges in this Circuit who have considered the issue have applied, which requires that each asserted act of retaliation be exhausted separately.

Finally, Redding explains that, after filing this lawsuit on October 26, 2016, she initiated the agency EEO process on November 8, 2016, for certain of her retaliation allegations. *See* Pl.'s Resp. SoMF ¶ 2. She argues that because DIA's investigation of these allegations concluded on August 24, 2017, they are now ripe for adjudication by this Court. *See* Pl.'s Supp. Br. But that argument fails on the facts and the law.

A plaintiff has exhausted her administrative remedies under Title VII once the agency has taken a "final action" on her administrative charge. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R.

§ 1614.407(a); *Bowe-Connor v. Shinseki*, 923 F. Supp. 2d 1, 5 (D.D.C. 2013). By its own terms, DIA's August 2017 letter did "*not* constitute a final Agency decision on [Redding's] complaint." Pl.' Supp. Br. at 3 (emphasis added). As the letter explained, Redding could receive a final decision by either (1) requesting one or (2) waiting for DIA to issue one on its own. *See id.* at 4. There is no indication that DIA took a final agency action on either basis.[6] And while Redding could file a new lawsuit based on these allegations by claiming exhaustion due to the agency's failure to act within 180 days of the filing of her administrative charge, *see* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(b), she cannot do so through this action, which she filed before the 180 days had concluded—or had even begun, *see Murthy v. Vislack*, 609 F.3d 460, 465 (D.C. Cir. 2010). As a result, the Court must terminate Redding's unexhausted claims without prejudice. *See id.* at 466.

Therefore, the Court grants summary judgment for Defendant on its exhaustion defense and dismisses the retaliation claims in Count II, except for those claims related to the Division Chief's comments, without prejudice.

### B. The Viability of Redding's Remaining Retaliation Allegations Under Rule 12(b)(6)

As a result of the foregoing analysis, the only surviving allegations in Count II relate to the Division Chief's comments in June and August 2013. Defendant argues that these allegations do not make out a retaliation claim. Def.'s Br. at 4-5. While the parties presented the Court with a factual record making the exhaustion issue fit for summary judgment without the

---

[6] The Court notes that DIA was required to issue a final decision within 90 days of its investigative report absent a request from Redding. 29 C.F.R. § 1614.110(b). But even if DIA failed to do so, that failure would not be a "final action." The relevant regulations do not provide that an agency investigative report automatically becomes a "final action" due to agency inaction. That distinguishes such reports from decisions by administrative judges, which do become final actions if the agency does not act within 40 days. *Compare* 29 C.F.R. § 1614.108(f) (agency investigative reports), *with id.* § 1614.109(i) (decisions by administrative judges).

need for discovery, summary judgment on the merits of Redding's retaliation claim would be inappropriate prior to discovery. Thus, the Court must resolve the viability of the remaining allegations in Count II based on the pleadings alone under Rule 12(b)(6).

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). "In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). "But the Court need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Id.* "To survive a motion to dismiss, a complaint must have 'facial plausibility,' meaning it must 'plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012)). To get past a Rule 12(b)(6) motion, a plaintiff is not required to allege every element of a *prima facie* retaliation claim. *See Gordon v. U.S. Capitol Police*, 778 F.3d 158, 161-62 (D.C. Cir. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

11

Nonetheless, the plaintiff must still plead enough facts to "nudge[]" the claim "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, a court must dismiss a retaliation claim where the plaintiff has not alleged facts that could plausibly constitute a materially adverse action. *See Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011).

Whether an employer's action is "materially adverse" is judged from the standpoint of "a reasonable employee," and this objective test is satisfied only if the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). In *Mogenhan*, for example, the D.C. Circuit concluded that the following acts could have dissuaded a reasonable worker from making a charge: (1) posting the plaintiff's EEO charge on an intranet site where other employees could access it, twenty days after the employee had sought counseling; and (2) "burying [the plaintiff] in work" to "keep [her] too busy to file complaints." *Id.* Similarly, in *Welch v. Skorton*, 299 F. Supp. 3d 102 (D.D.C. 2018), the court concluded that a reasonable jury could find that an employer had taken a materially adverse action by informing coworkers that the plaintiff had filed an EEO complaint. *Id.* at 113.

By contrast, "petty slights or minor annoyances that often take place at work and that all employees experience" are not adverse actions that can support a retaliation claim under Title VII. *Bridgeforth*, 721 F.3d at 663 (quoting *Burlington N.*, 548 U.S. at 68). For example, in *Gaujacq v. EDF, Inc.*, 601 F.3d 565 (D.C. Cir. 2010), a supervisor told the plaintiff that "[y]our career is dead [at the company] if you file the claim." *Id.* at 578 (first alteration in original). While acknowledging that a "threatening verbal statement, standing alone, *might* well constitute

a materially adverse action" in the right context, the D.C. Circuit held that this particular statement was not actionable under the facts of the case. *Id.* (emphasis added). Interpreting the statement in context—the company had "indulged [the plaintiff] at every turn," including by "creating a Vice President's position for her"—a "reasonable worker in [the plaintiff's] position would not have taken [the supervisor's] brief, fleeting, and unadorned verbal statement as an act or threat of retaliation." *Id.*

Here, the Division Chief's alleged comments are not actionable. According to Redding, on June 21, 2013, the Division Chief said the following: "people have been here too long," and "there are going to be some changes and then they will want to go to EEO. I do not care if they go to EEO." Am. Compl. ¶ 46. On August 21, he again said, "people have been here too long." *Id.* ¶ 47. As an initial matter, it is not clear that these comments were made in response to Redding's EEO charge or anything else she had done. *See Bridgeforth*, 721 F.3d at 663 (explaining adverse action must occur "because [the plaintiff] participated in protected activity"). The August comment did not refer to EEO activity or to Redding. And the June comment, if taken at face value, could not have referred to Redding's initial contact with an EEO counselor, because it referred to *future* EEO complaints that could be filed in response to *future* employment actions the Division Chief might take. *Cf. Poole v. U.S. Gov't Publ'g Office*, 219 F. Supp. 3d 80, 84 (D.D.C. 2016) (holding supervisor's comments were not actionable where the complaint was "unclear about which retaliatory acts were directed at which Plaintiffs and when").

Even assuming the Division Chief did have Redding's EEO activity in mind when he made these comments, they were at most fleeting and minor annoyances, not "materially adverse" actions that "might have dissuaded a reasonable worker from making or supporting a

charge of discrimination." *Mogenhan*, 613 F.3d at 1166 (quoting *Burlington N.*, 548 U.S. at 68); *cf. Brokenborough v. District of Columbia*, 236 F. Supp. 3d 41, 59 (D.D.C. 2017) (holding that "single incidents of verbal taunts and mocking, eye-rolling and cursing, a forged leave request slip, and an incident in which someone pretending to be [the plaintiff] called in sick" were not materially adverse actions). The complaint does not make clear whether the Division Chief made his comments to Redding, to another employee, or to a group of employees. *See* Am. Compl. ¶¶ 46-47. Regardless, he did not mention Redding by name, meaning that unless other employees within earshot already knew that Redding had made an EEO complaint, they could not have connected the comments to her. That distinguishes this case from *Mogenhan* and *Welch*, where supervisors took adverse actions by singling the plaintiffs out in front of other employees. In addition, the Division Chief's comments fell well short of the comment found not to constitute retaliation in *Gaujacq*: it did not "threaten" anyone with adverse consequences for filing an EEO complaint, but merely said that the prospect of such complaints would not deter him from making necessary staffing changes. *Cf. Johnson v. District of Columbia*, 947 F. Supp. 2d 123, 129, 140, 142 (D.D.C. 2008) (finding no "direct threat" where supervisor allegedly said "she would no longer help [the plaintiff] because [he] had an attorney and [he] was 'in legal'" (second and third alterations in original)).

Even at the motion to dismiss stage, Redding "must allege more to state a claim for retaliation." *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 38 (D.D.C. 2018). None of the facts alleged suggests that the Division Chief's comments even conceivably constituted a materially adverse action. The comments, on their face, did not suggest that employees would suffer any materially adverse action for EEO activity. Nor does Redding provide any context explaining how these remarks might otherwise have been interpreted as such. And she "fails to

offer any explanation for how she suffered any tangible consequence" because of the comments. *Fields v. Vilsack*, 207 F. Supp. 3d 80, 91 (D.D.C. 2016). Thus, even drawing all reasonable inferences in Redding's favor, it is impossible to see how these comments could have dissuaded a reasonable employee from pursuing charges of discrimination. *Cf. Buie v. Berrien*, 85 F. Supp. 3d 161, 178 (D.D.C. 2015) (concluding plaintiff did not plausibly allege supervisor committed materially adverse actions when supervisor "excluded her from assignments, slammed a door in her face, told others that she did not want to train or supervise her, told plaintiff that 'a fifth grader could do [her] job,' and both yelled at and ignored her" (alteration in original)); *Swann v. Office of Architect of Capitol*, 73 F. Supp. 3d 20, 28-29 & n.3 (D.D.C. 2014) (dismissing, under Rule 12(b)(6), retaliation claim grounded in comments that could not plausibly be characterized as a threat) , *aff'd*, No. 15-5001, 2015 WL 5210251 (D.C. Cir. Aug. 18, 2015); *King v. Holder*, 950 F. Supp. 2d 164, 172 (D.D.C. 2013) (dismissing retaliation claim based, among other things, on a "single verbal altercation between" plaintiff and defendant).

Instead of explaining how her allegations satisfy the legal standard set forth in controlling case law, Redding relies on a number of EEOC decisions holding that an employer engages in "*per se* reprisals" whenever it discourages EEO activity. Pl.'s Opp'n at 4-6. It appears that such "*per se* reprisals" are not violations of Title VII itself, but instead are violations of EEOC regulations that prohibit unlawful interference in the EEO process. *See, e.g.*, *Binseel v. Caldera*, Appeal No. 01964879, 1998 WL 730929, at *2 (E.E.O.C. Oct. 8, 1998). Given that these decisions rest on the EEOC's interpretation of its own regulations, Court finds them of no value in applying the standards set forth by the Supreme Court and the D.C. Circuit for Title VII retaliation claims. And in fact, a rule that certain comments constitute *per se* retaliation under

Title VII would be inconsistent with *Gaujacq*, which held that threatening comments may be, but are not necessarily, materially adverse actions. *See* 601 F.3d at 578.

Even if these decisions did have persuasive value in Title VII retaliation cases, they would be easily distinguishable:

- In *Marr v. Widnall*, Appeal No. 01941344, 1996 WL 375789 (E.E.O.C. June 27, 1996), a supervisor repeatedly attempted to dissuade one of the complainant's coworkers from testifying as a witness in an EEO investigation. *Id.* at *12.

- In *Binseel*, a supervisor told the complainant "that filing an EEO complaint was the wrong way to go about getting a promotion." 1998 WL 730929, at *2.

- In *Webster v. Gates*, Appeal No. 0120080665, 2009 WL 3845793 (E.E.O.C. Nov. 4, 2009), "a supervisor was openly and heatedly talking with complainant concerning the stress he was feeling about complainant's discrimination complaint." *Id.* at *9.

- In *Smith v. Winter*, Appeal No. 0120082983, 2010 WL 750852 (E.E.O.C. Feb. 16, 2010), a supervisor prevented the complainant from taking time off to meet with an EEO counselor. *See id.* at *5-6.

- In *Williams v. McHugh*, Appeal No. 0120090596, 2011 WL 1690815 (E.E.O.C. Apr. 29, 2011), a supervisor told the complainant "it would not be in [his] best interest to file an EEO complaint" and that EEO activity "created racial strife in the workplace." *Id.* at *4.

- In *Carter v. Shinseki*, Appeal No. 0120122266, 2012 WL 5285520 (E.E.O.C. Oct. 18, 2012), a supervisor told the complainant "that she needed to watch when and where she said things in that some things needed to be talked about in private and not out in the open where all can hear." *Id.* at *1.[7]

In each case, a supervisor specifically targeted the complainant with words or conduct intended to dissuade him or her from pursuing an EEO complaint. Here, as already explained, the

---

[7] Redding also cites *Boyd v. Slater*, Appeal No. 01955276, 1997 WL 654451 (E.E.O.C. Oct. 10, 1997), in which the EEOC declined to consider whether the agency interfered with the complainant's exercise of her EEO rights. *See id.* at *4.

statements at issue did not refer to Redding specifically. And as noted above, they did not in fact discourage EEO activity.

Therefore, the allegations concerning the Division Chief's comments do not suffice to make out a retaliation claim under Title VII, and Count II must be dismissed.

III. **Conclusion and Order**

For the reasons set forth above, it is hereby **ORDERED** that Defendant's motion (ECF No. 12) is **GRANTED**, and Count II of the Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 29, 2018